## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| R. TAMARA de SILVA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 4259 |
| | ) | |
| v. | ) | Hon. Thomas M. Durkin |
| | ) | |
| SALVATORE CINQUEGRANI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Salvatore Cinquegrani ("Cinquegrani") moves for attorney's fees and sanctions against Plaintiff R. Tamara de Silva ("de Silva") pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. For the following reasons, the motion is denied.

## Procedural Background[1]

De Silva brought this suit against Cinquegrani alleging claims of breach of contract and promissory estoppel. R. 1. Cinquegrani is the CEO of Objectwave Corp., a software development company. R. 37 ¶ 7. De Silva knew Cinquegrani because the two were acquainted as neighbors. *Id*. ¶ 8. De Silva alleged that she and Cinquegrani entered into a contract in which Cinquegrani agreed to develop a financial markets software application. R. 1 ¶ 6. De Silva further alleged that she was in the process of developing the software, and "specifically changed

---

[1] To the extent relevant to this motion, the Court repeats the factual background from its order on August 20, 2013, regarding de Silva's motion to dismiss Cinquegrani's counterclaim and stay discovery. R. 84.

programmers based upon Cinquegrani's promises to help develop it." *Id*. ¶ 13. De Silva asserted that had Cinquegrani not agreed to develop this software, she would have found someone else to develop it. *Id*. De Silva also alleged that she spent in excess of 100 hours of her own time in developing the software along with Cinquegrani. *Id*. ¶ 15.

At some point, the parties had a falling out, and Cinquegrani refused to return de Silva's information and the software he had developed to that point. R. 1 ¶¶ 17-18. On June 23, 2011, de Silva filed suit against Cinquegrani. R. 1. In the complaint, de Silva sought recovery for damages and equitable relief to prevent Cinquegrani from destroying the developed software and requesting he tender it to her. *Id*. Cinquegrani moved to dismiss de Silva's complaint. R. 18. The Court granted Cinquegrani's motion and dismissed de Silva's complaint without prejudice. The Court held that de Silva failed to allege consideration, a necessary element of a breach of contract claim, and further failed to allege that de Silva's reliance on Cinquegrani's promise was expected or foreseeable by Cinquegrani, a necessary element of her promissory estoppel claim. *De Silva v. Cinquegrani*, No. 11-C-4259, 2012 WL 1230763, at *4 (N.D. Ill. Apr. 12, 2012) (Leinenweber, J.). R. 24.     De Silva filed an amended complaint once again alleging breach of contract and promissory estoppel, which Cinquegrani moved to dismiss. R. 26; R. 27. The Court allowed de Silva's promissory estoppel claim to stand, holding that unlike her previous complaint, her amended complaint adequately pled foreseeable reliance. *De Silva v. Cinquegrani*, No. 11-C-4259, 2012 WL 4017944, at *2 (N.D. Ill. Sept. 12,

2012) (Leinenweber, J.). Specifically, the Court pointed to de Silva's allegations that "'[a]t all times, [Defendant] expected and could foresee that his promise to create the software based upon de Silva's algorithms caused her to chose [sic] Cinquegrani as a programmer rather than other programmers[,]'" that she "stressed to [Cinquegrani] that time was of the essence because potential buyers were interested in the program" and "that the promise took her away from other potential programmers," all of which she "explained" to Cinquegrani "at the time that the parties negotiated the matter, and through subsequent e-mail conversations." *Id.* As to the breach of contract claim, the Court again dismissed the claim because the amended complaint still failed to adequately plead consideration. *Id.* On November 14, 2012, Cinquegrani filed a two-count counterclaim against de Silva seeking a declaratory judgment and alleging a state law claim of unjust enrichment. R. 38.

On January 14, 2013, the case was reassigned to the undersigned Judge. R. 41. Cinquegrani later moved to compel de Silva to—among other things—respond to interrogatories and moved for sanctions related to these delays. R. 50. Judge Gilbert, the Magistrate Judge assigned to the case, largely granted Cinquegrani's motion to compel, awarding him $1,040 in attorney's fees and costs associated with bringing the motion. R. 53; R. 54; R. 67. One of the interrogatories de Silva was ordered to respond to, interrogatory number six (6), asked de Silva to identify the potential buyers for her software. R. 86-10 at 2-3. De Silva stated "[p]otential buyers of market risk/volatility software are naturally every single market user." *Id.* at 3. On August 5, 2013, de Silva moved to dismiss her case voluntarily, and this Court

granted her motion with prejudice. R. 78; R. 82. The Court also granted de Silva's motion to dismiss Cinquegrani's counterclaims. R. 84.

## Analysis

Cinquegrani seeks attorney's fees as a sanctions against de Silva based on Rule 11 and 28 U.S.C. § 1927. R. 86. He claims that fees are warranted because: (1) de Silva filed two complaints pursuing a breach of contract claim while knowing there was no written contract; (2) de Silva pursued a promissory estoppel claim knowing that there were "no actual programmers or investors" interested in the software; and (3) de Silva refused to respond to, and delayed, discovery. R. 86 ¶¶ 24-27.[2]

### A. Rule 11 Sanctions

Rule 11 gives counsel "a duty to make a reasonable inquiry in advance of filing to ensure that no action 'for any improper purpose' is filed." *City of E. St. Louis v. Circuit Ct. for the Twentieth Judicial Circuit*, 986 F.2d 1142, 1143 (7th Cir. 1993). Rule 11 provides that courts "may impose an 'appropriate sanction' for a violation of Rule 11(b)." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013) (citing Fed. R. Civ. P. 11(c)(1)). Subdivision (b) of Rule 11 provides:

---

[2] To the extent Cinquegrani argues that de Silva's voluntary dismissal of her claim after two years of litigation "only days" before she was required to appear for her deposition is a basis for fees, R. 86 ¶ 23, his argument is unavailing. As the Seventh Circuit recognized in *Mach v. Will County Sheriff*, "[A]bandoning unprovable claims generally indicates the *absence* of bad faith." 580 F.3d 495, 501 (7th Cir. 2009) (emphasis in original). In this case, particularly in light of the avoidance of resources that would have been expended by both sides in taking de Silva's deposition, de Silva's voluntary dismissal more likely showed counsel's responsible decision to dispose of unsupportable claims, not sanctionable misconduct.

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

"Rule 11 sanctions are only to be granted sparingly . . . and should not be imposed lightly." *Lefkovitz v. Wagner*, 219 F.R.D. 592, 593 (N.D. Ill. 2004) (citing *Hartmax Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003); *Zralka v. Tures*, 708 F. Supp. 948, 951 (N.D. Ill. 1989)). "The decision to grant or deny a motion for Rule 11 sanctions is within the sound judgment of the district court and will be disturbed only where the court abuses its discretion." *Cooney*, 735 F.3d at 523.

In order to make sure that sanctions are only imposed when appropriate, "[n]otice plays a central part in the Rule 11 process." *Feldman v. Olin Corp.*, 692 F.3d 748, 758 (7th Cir. 2012). Rule 11 requires that the movant satisfy two

procedural requirements. *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999). First, Rule 11(c)(2) states that a motion for sanctions "must be made 'separately from other motions or requests and [must] describe the specific conduct alleged to violate subdivision (b).'" *Id.* (quoting Fed. R. Civ. P. 11(c)(1)(A)); *Harris v. Franklin-Williamson Human Servs., Inc.*, 97 F. Supp. 2d 892, 909 (S.D. Ill. 2000). Second, a Rule 11 motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11 (c)(2); *Harris*, 97 F. Supp. 2d at 910. The twenty-one day window provides the non-movant with "safe harbor." *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.*, 649 F.3d 539, 552 (7th Cir. 2011).

Cinquegrani failed to comply with Rule 11's second procedural requirement—giving de Silva a twenty-one day safe harbor period to take any action. Cinquegrani argues that the twenty-one day safe harbor provision does not apply in this case because de Silva's complaint "has been dismissed with prejudice and there was nothing more to amend." R. 96 at 2. However, the Seventh Circuit has made clear that the twenty-one day safe harbor requirement still applies even after a court enters final judgment. *See, e.g., Matrix IV, Inc.*, 649 F.3d at 553 (noting that "[p]ostjudgment motions for sanctions are permissible so long as the moving party substantially complies with Rule 11's safe-harbor requirement"); *see also Divane*, 200 F.3d at 1026 (reasoning that "the twenty-one day safe harbor is not an empty formality" and is still required after final judgment).

While Cinquegrani claims in his reply that he "has clearly given notice to DeSilva [sic] that her Complaint was frivolous and sanctionable when filed on both occasions," R. 96 at 2, he fails to cite to the record or show how such notice satisfied Rule 11's safe harbor requirement. Cinquegrani states that on August 20, 2013, the day the Court granted de Silva's motion to dismiss, R. 84, Cinquegrani's counsel objected to the dismissal based on his request for attorney's fees. R. 86 ¶ 24. But even if that objection constitutes sufficient notice, Cinquegrani filed his motion for sanctions only three days later, on August 23, 2013, R. 86, failing to comply with the twenty-one day safe harbor requirement.

Further, Cinquegrani bases his motion for sanctions primarily on his argument that de Silva's interrogatory responses from February 2013, R. 86 ¶ 12; R. 86-7, and May 2013, R. 86 ¶ 18, R. 86-10, revealed that she had no basis to pursue her contract and promissory estoppel claims. The Seventh Circuit has noted that "[w]here appropriate, sanctions motions 'should be filed at an earlier time-as soon as practicable after discovery of a Rule 11 violation.'" *Sullivan v. Hunt*, 350 F.3d 664, 666 (7th Cir. 2003) (citing *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992)). If, as Cinquegrani argues, de Silva's discovery responses revealed that she had no basis for her claims, he should not have delayed the filing of his Rule 11 motion until August 23, 2013. Cinquegrani's motion for Rule 11 sanctions is therefore denied.[3]

---

[3] De Silva argues that Cinquegrani's motion based on Rule 11 and 28 U.S.C. § 1927 should be denied because it also violates the requirement that a motion for sanctions under Rule 11 must be made "'separately from other motions or requests

**B. 28 U.S.C. § 1927 Sanctions**

Cinquegrani next argues that he is entitled to 28 U.S.C. § 1927 sanctions. "The federal common law of attorneys' fee awards is the 'American rule,' under which each party to a lawsuit bears his own expenses of suit unless 'the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Stive v. United States*, 366 F.3d 520, 521 (7th Cir. 2004) (internal quotation marks omitted) (citing *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1235 (7th Cir. 1985)). Accordingly, Section 1927 prohibits bad faith by the parties and states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

While subjective bad faith will certainly support imposing fees, such a finding is not necessary. *Tate v. Ancell*, Nos. 11-3252, 12-2694, 2014 WL 186353, at *13 (7th Cir. Jan. 17, 2014). This Court ultimately has discretion to award fees "when an attorney has acted in an 'objectively unreasonable manner' by engaging in 'serious

---

and must describe the specific conduct alleged to violate subdivision (b).'" R. 94 at 3-4 (quoting *Divane v. Krull Electric Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999)). This Court has previously recognized that there is a split of authority as to whether "including a request for § 1927 sanctions with a request for Rule 11 sanctions … violates the separate motion requirement of Rule 11(c)(2) and therefore would also be grounds for denying the request for Rule 11 sanctions." *Hasham v. Cal. State Bd. of Equalization*, No. 96-CV-3326, 2008 WL 4091002, at *4 n.9 (N.D. Ill. Aug. 21, 2008). Because the Court finds that Cinquegrani failed to comply with Rule 11's twenty-one day safe harbor requirement, it need not address this argument.

and studied disregard for the orderly process of justice.'" *Jolly Group Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (citing *Pacific Dunlop Holdings Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994)). Objectively unreasonable behavior includes pursuing a claim "without a plausible legal or factual basis and lacking in justification" or "pursu[ing] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Group Ltd.*, 435 F.3d at 720. (additional citations omitted). Attorneys also have a "continuing duty to dismiss claims that are no longer viable." *Hess v. Reg-Ellen Mach. Tool Corp.*, 367 Fed. Appx. 687, 691 (7th Cir. 2010).

None of the reasons Cinquegrani sets forth justify shifting Cinquegrani's attorney's fees to de Silva. [4] With respect to de Silva's discovery delays, Judge Gilbert already sanctioned de Silva for this conduct. R. 67. Judge Gilbert's ruling made clear that de Silva would pay Cinquegrani's attorney's fees and expenses dealing with Cinquegrani's motion to compel. *Id*. It would therefore be improper for this Court to allow Cinquegrani to once again use de Silva's discovery delays in order to justify receiving monetary sanctions.

---

[4] To the extent Cinquegrani raises the new argument in his reply brief that he seeks fees because de Silva "[knew] that the software  was only a demonstrative application and could not be monetized," R. 96 at 2, that argument is deemed waived. See *Drabik v. Drabik*, No. 09-CV-0028, 2013 WL 2285791, at *3 (N.D. Ill. May 23, 2013) (deeming waived new arguments raised on reply and noting that "[a] reply brief is for replying, not for raising new arguments that were not raised in the opening brief") (internal quotation marks omitted) (citing *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring)).

The pursuit of a breach of contract claim despite the lack of a written contract also does not warrant forcing de Silva to pay Cinquegrani's attorney's fees. Written contracts are not necessary in order to bring a breach of contract claim. As Judge Leinenweber noted in his ruling on Cinquegrani's motion to dismiss the amended complaint, an oral contract for employment is valid so long as it contains a clear and definite agreement and is supported by sufficient consideration. *De Silva*, 2012 WL 4017944, at *2 (citing *Kirgan v. FCA, LLC*, 838 F. Supp. 2d 793, 797 (C.D. Ill. 2012) (citing *Taylor v. Canteen Corp.,* 69 F.3d 773, 782 (7th Cir. 1995))). As a result, de Silva did not act unreasonably or vexatiously in bringing the breach of contract claim in her lawsuit.

The allegation that de Silva did not have potential buyers lined up to purchase her software is a closer question, though it also does not warrant sanctions. In her amended complaint, de Silva pled that she had "demand for th[e] product from potential buyers and users" and alerted Cinquegrani that she "had interested potential buyers." R. 26 ¶¶ 15, 21. De Silva also alleged that Cinquegrani "destroyed her code after learning that [she] had secured potential buyers," and that she was "forced to delay presenting completed software to many potential buyers and customers." R. 26 ¶¶ 21, 23. Later, in responding to interrogatory request number 6 to identify potential buyers, de Silva vaguely and somewhat non-responsively stated: "Potential buyers of market risk/volatility software are naturally every single market user." R. 86-10 at 2-3 ¶ 6. That answer by itself smacks of obfuscation and seems to suggest de Silva really had no actual potential

buyers. However, de Silva notes in her response to Cinquegrani's motion for fees that the parties "discussed the existence of potential investors" prior to their falling out as demonstrated in a January 2011 email exchange between the parties that de Silva produced in her interrogatory responses. R. 94 at 7; R. 95. In that exchange, Cinquegrani tells de Silva he is "meeting with Bloomberg this morning . . . about the feed handler" and asks de Silva if she "want[s] to be present." R. 95 at 1. De Silva responds that she "can be there if it would be of any use." *Id.* Cinquegrani responds, twice making reference to "[de Silva's] investor": "[I]t is only necessary if you think your investor will want to know about costs of development . . . I'm not sure if you are presenting a business plan to your investor." *Id.* This acknowledgement weakens Cinquegrani's argument and suggests real investors existed.

Even if de Silva's amended complaint—including her statement that she had "secured" potential buyers—overstated the existence of specific potential buyers or investors for her software, this does not, by itself, justify sanctions. Their existence was not necessary to establish a promissory estoppel claim. In order to state a promissory estoppel claim, the plaintiff must allege "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 525 (Ill. 2009) (citations omitted). De Silva's promissory estoppel claim survived Cinquegrani's motion to dismiss because she pled sufficient facts to show

the third element—foreseeable reliance by Cinquegrani. R. 34 at 2. As the Court noted, de Silva pled sufficient facts by alleging that Cinquegrani expected and could foresee that his promise to create the software based upon de Silva's algorithms caused her to choose him over other programmers. *De Silva*, 2012 WL 4017944, at *2. Additionally, de Silva pled that she stressed to Cinquegrani that "time was of the essence because potential buyers were interested in the program" and "that the promise took her away from other potential programmers," all of which she explained to Cinquegrani "at the time that the parties negotiated the matter, and through subsequent e-mail conversations." *Id.* The Court's ruling was not qualified by the existence of specific potential buyers. As a result, de Silva did not multiply proceedings unreasonably or vexatiously by continuing to prosecute her promissory estoppel claim despite not identifying specific potential buyers. At most, the lack of specific potential buyers shows that de Silva had a weak case. This does not justify forcing de Silva to pay Cinquegrani's attorney's fees. *See Philos Techs., Inc. v. Philos & D, Inc.*, 943 F. Supp. 2d 880, 889 (N.D. Ill. 2013) (reasoning that "advancement of an unsound basis on which to seek relief does not necessarily call Section 1927 into play."). Cinquegrani's motion for attorney fees under Section 1927 is therefore denied.

## Conclusion

For the foregoing reasons, this Court denies Cinquegrani's motion for attorney's fees, R. 86.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  August 13, 2014